United States District Court
Southern District of Texas
**ENTERED**
June 14, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FCCI INSURANCE COMPANY, § | |
| *Plaintiff,* § | |
| § | |
| V. § | CIVIL ACTION NO. 4:20-cv-2716 |
| § | |
| MARINE TECH SERVICES, ET AL., § | |
| *Defendants.* § | |

## MEMORANDUM AND RECOMMENDATION

This breach of contract action is before the Court on Plaintiff's Motion for Summary Judgment (ECF 31) and Motion to Dismiss Defendants' Amended Answer and Counterclaim (ECF 34), and Defendants' Cross-Motion for Summary Judgment (ECF 32). Having considered the parties' submissions and the law, the Court recommends that Plaintiff's motions be GRANTED and Defendants' cross-motion be DENIED.

**I.    Background**

This case arises out of the repair of a State Highway 35 bridge near Port Lavaca, Texas. Defendant Marine Tech Services (MTS) was a subcontractor on the bridge project and SCR Civil Construction was the general contractor. Plaintiff FCCI Insurance Company (FCCI) is the Surety and Defendants are Indemnitors under a General Indemnity Agreement executed on February 5, 2016 in connection with the bridge project. Pursuant to the General Indemnity Agreement and at the request of one or more of the Defendant Indemnitors, FCCI issued Performance and Payment Bond #440567 (the Bonds). FCCI alleges that multiple claimants have made claims on the Bonds, and as of the date of filing its Motion for Summary Judgment it has suffered losses on the Bonds of approximately $1,150,0000.

FCCI initially sued Defendants in state court in Harris County, Texas in March 2017 to recover its losses on the Bonds.  SCR filed a lawsuit against MTS in state court in Fort Bend County, Texas, in which MTS has asserted counterclaims for fraud and misrepresentation.   FCCI voluntarily non-suited its state court case on July 28, 2020 and filed this action in federal court on August 4, 2020 on the basis of diversity jurisdiction.  FCCI moves for complete summary judgment as a matter of law on its claims against Defendants for contractual indemnity and for dismissal of Defendants' counterclaim as untimely and on the merits.  In response, Defendants raise defenses of the statute of limitations, lack of consideration, bad faith, and failure of conditions precedent.

## II.     Plaintiff's Motion for Summary Judgment

### A.     Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial.  *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001).   If the party moving for summary judgment bears the burden of proof on an issue he must "establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  If a moving party who does not bear the burden of proof meets its initial burden, the nonmoving party must go beyond the pleadings and must present evidence such as affidavits, depositions, answers to interrogatories, and admissions on file to show "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party.

*Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002).

The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013). In ruling on a motion for summary judgment the Court does not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987). However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *Celotex*, 477 U.S. at 325).

### B. Choice of Law

Plaintiff's state law cause of action against Defendants invokes this Court's diversity jurisdiction. ECF 8. Therefore, the Court must apply state substantive law and federal procedural law to the issues in the case. *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996). In choosing the appropriate state law, the Court applies the choice of law rules of the forum state, here Texas. *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 249 (5th Cir. 1990). Contractual choice of law provisions are generally enforceable in Texas. *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 133 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) ("Provided the law of the chosen state bears some reasonable relationship to the parties and the transaction, Texas will apply the law specified in the contract."). Plaintiff's motion for summary judgment cites Texas law. *See* ECF 31. Defendants pointed out in response that the GIA

contains a choice of law provision stating that "[t]his Agreement is governed by the laws of the State of Florida, without regard to any conflicts of law rules . . .." ECF 32 at 13 (citing GIA § XVI.A). Plaintiff notes that Defendants have not pointed out any conflict between Texas and Florida law, but agrees that Florida law governs this case. ECF 36 at 3 ([T]he Surety will agree to application of Florida law as requested by Indemnitors.").

      **C.**      **Statute of Limitations**

Despite having advocated for application of Florida law, Defendants argue that Plaintiff's claims are barred by Texas's four-year statute of limitations for breach of contract actions. ECF 32 at 3. Defendants contend that Plaintiff's claims accrued in January 27, 2016 when it sent Defendants a demand for collateral (ECF 32-2), or at the latest in July 2016 when SCR took MTS off the project (ECF 32-4 at 8). FCCI filed this case in August 2020.

Under Florida law, the statute of limitations for a breach of contract action is five years. FLA. STAT. ANN. § 95.11.[1] Therefore, even assuming FCCI's claims accrued in January 2016, FCCI's claims are timely.[2]

Defendants also assert that FCCI's claims are barred by laches. Laches is a doctrine applicable in equity that does not apply to an action at law for which there is a statute of limitations. *In re Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 5774287, at *3 (S.D. Fla. Oct. 24, 2013). To the extent Florida law would recognize laches as a bar to an action before the statute of limitations expires, it would do so only where "strong equities" are present. *Goodwin v. Blu Murray Ins. Agency, Inc.*, 939 So. 2d 1098, 1105 (Fla. Dist. Ct. App. 2006).

---

[1] Defendants also contend that FCCI's claims are barred by the one-year limitation provision in the Performance Bond itself. ECF 31-3 at 2. But FCCI is not suing for breach of the Bonds, but for breach of the GIA.

[2] Defendants' reliance on the purported January 27, 2016 demand for collateral is erroneous because the letter is actually from January 27, 2017 as is clear from the second page of the letter and from the fact that the parties did not execute the GIA until February 5, 2016. In addition, Defendants cite no authority for the proposition that FCCI's claims accrued when SCR terminated MTS as opposed to when FCCI made the first payment on the Bonds in February 2017. In any event, all relevant actions took place within 5 years of filing suit.

Given that FCCI sued Defendants in 2017 in state court and that lawsuit remained pending until 2020 shortly before FCCI filed this one, Defendants claim that FCCI unreasonably delayed asserting its claims is without merit.

**D. Plaintiff is Entitled to Summary Judgment on its Claims for Contractual Indemnity.**

**1. The parties' entered an enforceable indemnity agreement.**

Under Florida law, the indemnity agreement, not the performance bond, "governs the rights and obligations of a principal and surety." *Devs. Sur. & Indem. Co. v. Magna Constr., Inc.*, No. 07-22753-CIV, 2008 WL 11333900, at *6 (S.D. Fla. Sept. 16, 2008). Due to the vital role of sureties in the construction industry, courts nationally and in Florida "consistently enforce . . . agreements and . . . remedies" designed for the protection of sureties. *Liberty Mut. Ins. Co. v. Aventura Eng'g & Const. Corp.*, 534 F. Supp. 2d 1290, 1303 (S.D. Fla. 2008).

The General Indemnity Agreement in this case obligates Defendants to "exonerate, indemnify, keep indemnified, and save harmless" FCCI from all loss of any kind incurred in connection with the Bonds. ECF 31-2, § IV.A. The GIA contains a "prima facie evidence" clause that provides:

> an itemized statement of the aforesaid loss and expense, sworn to through affidavit or otherwise by a representative of Surety, or the vouchers or other evidence (including copies of checks or printouts from Surety's internal records) of disbursement by Surety, shall be prima facie evidence of the fact and extent of the liability….

*Id.* § IV.D. The GIA also contains a "right-to-settle" clause that grants FCCI the right to:

> determine in its sole discretion whether any claims shall be paid, compromised, defended, prosecuted, or appealed, regardless of whether or not suit is actually filed or commenced against Surety upon such claim. Absent fraudulent intent on the part of the Surety, Undersigned agree to be conclusively and unconditionally bound by Surety's determination.

*Id.*, § VI.A.10.  The GIA further provides that if the indemnitors desire Surety to resist or litigate a claim it has determined is meritorious, they must give notice and simultaneously provide Surety with collateral sufficient to cover the claim.  *Id.,* § VI.C.

FCCI has established the existence of a valid General Indemnity Agreement.  ECF 32-1. Defendants contend that the GIA is unsupported by consideration because the Performance Bond attached to the Motion for Summary Judgment is unsigned.  ECF 32 at 17.  This argument is without merit. The GIA provides:

> In return for Surety's consideration of an application for and/or Surety's execution of any Bond or Bonds for Principal, or the forbearance of cancellation of any existing Bond or Bonds, and as an inducement to Surety's consideration, execution, or forbearance, Undersigned, jointly and severally, agree. . . [.]

ECF 32-1 at 2.  "Under Florida law, where the indemnity agreement provides that the indemnitor has a beneficial interest in obtaining issuance of a bond, an indemnitor may not deny the express terms of the indemnity agreement by alleging there was no consideration."  *Hartford Fire Ins. Co. v. New York Mart Group, Inc.*, 391 F. Supp. 3d 1175, 1177 (S.D. Fla. 2019); *see also Travelers Cas. & Surety Co. of America v. Design Build Engrs. and Contrs. Corp.*, Civil Action No. 6:14-cv-1636, 2014 WL 7274803, at *6 (M.D. Fla. 2014) (holding under Florida law that, where the indemnity agreement recites that indemnitor executed agreement in consideration for obtaining bonds, indemnitor cannot challenge consideration).  In other words, whether or not the Bonds are valid (or unsigned) is not a defense to the validity of the GIA.  Furthermore, Defendants do not dispute the existence of the Bonds—they object that the document attached to the motion for summary judgment is not properly authenticated.  The Court overrules this objection because the Affidavit of Jim Kisner, the Director of Surety Claims for FCCI, authenticates Performance Bond #440567 as a business record of FCCI.[3]  ECF 31-1 at 4.  In any event, the validity of the GIA,

---

[3] Defendants object that Kisner's Affidavit is inadmissible under Florida and Texas Rules of Civil Procedure.  ECF

not the Bonds, is the relevant issue for purposes of FCCI's claims. *Magna Constr., Inc.*, 2008 WL 11333900, at *6.

### 2. FCCI has met its burden to show Defendants' liability.

FCCI has presented evidence that it paid claims pursuant to the Subcontract Performance Bond #4400567 on which MTS was Principal in the gross amount of $2,896,858.98. ECF 31-3, 31-4, 31-5. FCCI has presented evidence that it has suffered losses in the amount of $1,154,475.45, the difference between the amount FCCI paid on the Bonds ($2,883,892.34) and the amount it has recovered from other sources ($,1,729,416.89). Under the prima facie evidence clause of the GIA, this evidence satisfies FCCI's burden to demonstrate Defendants' liability. Defendants have not met their burden to present evidence that the claims were not actually paid by FCCI. Thus, FCCI has met its summary judgment burden to demonstrate it incurred a loss for which it is entitled to reimbursement by Defendants under the GIA. *See Aventura Eng'g & Const. Corp.*, 534 F. Supp. 2d at 1320 (finding summary judgment warranted under "the unambiguous terms of the Indemnity Agreement" that contained a prima facie evidence clause); *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 2245986, at *4 (S.D. Fla. May 29, 2008) (granting surety summary judgment on indemnity where defendant did not counter plaintiff's evidence of payments, which pursuant to the indemnity agreement amounted to a prima facie showing that the payments were made in good faith.).

### 3. Defendant has not met its burden to show bad faith by FCCI.

Pursuant to the right-to-settle clause, Defendants have the burden to show that FCCI paid the claims in bad faith or with fraudulent intent. "Bad faith" is more than mere negligence. *Fid.*

---

32 at 15. Defendants' objection is overruled. This case is governed by the Federal Rules of Civil Procedure. Under Rule 56(c)(4), an Affidavit submitted in support of summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The Kisner Affidavit satisfies these requirements.

*& Deposit Co. of Maryland v. C.E. Hall Const., Inc.*, 627 F. App'x 793, 796 (11th Cir. 2015) (bad faith "imports a dishonest purpose or some moral obliquity, and it implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will."); *United States Sur. Co. v. Best Constr. Drywall Servs., Inc.*, No. 8:16-CV-3102-T-23TGW, 2018 WL 2267109, at *2 (M.D. Fla. May 17, 2018) ("To show bad faith, an indemnitor must show that the surety acted with 'deliberate malfeasance,' which is 'an intentional wrongful act [that] the actor has no legal right to do or any wrongful conduct which affects, interrupts, or interferes with the performance of official legal duty.'" (citation omitted)). The exercise of a contractual right, without more, cannot form the basis for bad faith. *C.E. Hall Const., Inc.*, 627 F. App'x at 796. In addition, where a principal fails to give collateral as demanded by a surety, the principal cannot show the surety paid a claim in bad faith. *Devs. Sur. & Indem. Co.*, 2008 WL 11333900, at *7 ("several courts have held that a principal's failure to post collateral defeats a defense of bad faith against the surety"); *Employers Ins. Of Wausau v. Able Green, Inc.*, 749 F. Supp. 1100, 1103 (S.D. Fla. 1990) (defendant that did not request surety to litigate claims and did not post collateral cannot show bad faith); *Best Constr. Drywall Servs., Inc.*, 2018 WL 2267109, at 3 (defendants' failure to post collateral precluded reliance on the defense of bad faith);

Defendants' evidence of bad faith consists of the Declaration of Defendant Jerrod Monaghan, President of MTS. ECF 33. Monaghan contends that (1) he has never seen an executed copy of the Bonds and he does not know if the document attached to the Motion for Summary Judgment is accurate;[4] (2) FCCI had notice of the problems MTS was having with SCR; (3) FCCI refused to investigate SCR's wrongful action; (4) FCCI "participated" in SCR's decision

---

[4] Yet, in the same Declaration Monaghan states "Plaintiff is a surety bonding company who issued a performance bond on MTS' behalf as allegedly required by SCR's contract." ECD 33 at 3.

8

to remove MTS from the job in July 2016, preventing MTS from paying its subcontractors; and (5) FCCI wrongfully took possession of MTS's property from the work site. *Id.*

Defendants' evidence fails to create genuine issues of material fact as to FCCI's bad faith. As previously discussed, Defendants cannot defend FCCI's claim on the GIA by challenging the validity of the Bonds. *Magna Constr., Inc.*, 2008 WL 11333900, at *6. In addition, while Defendants argue that FCCI was obligated to investigate SCR's actions before paying claims, the express terms of the GIA obligated Defendants to give FCCI notice if they wanted FCCI to resist payment of any claim, and to put up collateral in an amount sufficient to cover litigation costs in order for FCCI to deny the claim. ECF 31-2, §§ VI.C, VII.A; *Devs. Sur. & Indem. Co.*, 2008 WL 11333900, at *7. Defendants have presented no evidence that they took either step. Defendants have presented no evidence that the parties paid by FCCI under the Bonds failed to perform the claimed work or were otherwise not entitled to payment. Finally, the GIA entitled FCCI to take possession of MTS's equipment, materials, and supplies at the work site in the event of any default. ECF 31-2, § VI.A(5). Numerous events constitute a default for purposes of the GIA, including failure to do the work under the SCR contract (whether or not justified and whether or not actual or alleged) and a declaration of default by the Obligee (here SCR). *Id.* § V(A), (B). FCCI notified Defendants of its intention to exercise its rights based on MTS's default in January 2017. ECF 32-2. Defendants make the conclusory assertion that MTS was not in default under the Contract; however, Defendants concede that MTS was taken off the project in July 2016 before completing the work it contracted to do. *See* ECF 33. Defendants cannot meet their burden to show FCCI's bad faith where FCCI exercised its contractual rights. *C.E. Hall Const., Inc.*, 627 F. App'x at 796.

### III. FCCI is entitled to Dismissal of Defendants' Counterclaim.

Defendants have asserted a counterclaim against FCCI seeking a declaratory judgment "that [MTS] did not breach the subcontract between SCR and MTS, but that FCCI breached the Bond Contract." ECF 30 at 10. FCCI moves to dismiss this Counterclaim[5] because (1) Defendants filed the counterclaim without leave of court; and (2) under standards applicable to FCCI's claim for indemnity, Defendants have failed to state a claim for relief against FCCI.[6]

Defendants essentially recast their defenses to FCCI's claim for breach of the GIA as an affirmative counterclaim for declaratory judgment. In the context of this case, FCCI's arguments in support of dismissal of the counterclaim pursuant to Rule 12(b)(6) overlap with its arguments in support of summary judgment on its affirmative claims. Because the Court has recommended granting summary judgment to FCCI on its contractual indemnity claim, and FCCI has brought no claim against Defendants for breach of the contract between SCR and MTS, there is no basis in law or fact for Defendants' Counterclaim for declaratory judgment against FCCI.

### IV. Conclusion and Recommendation

For the reasons stated above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment and Motion to Dismiss Counterclaim (ECF 31, 34) be GRANTED, and Defendants' Cross-Motion for Summary Judgment (ECF 32) be DENIED.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar

---

[5] FCCI's Motion to Dismiss does not take a position as to Defendants' Third-Party Complaint against SCR contained in the same amended pleading. This Memorandum and Recommendation takes no position on the Third-Party Complaint.

[6] FCCI filed its motion on February 25, 2021. To date Defendants have not filed a response. It is not appropriate to dismiss a claim with prejudice solely based on the failure to respond to a motion to dismiss. *Garza v. Formosa Plastics Corp.*, No. CIV.A. V-10-54, 2011 WL 121562, at *2 (S.D. Tex. Jan. 11, 2011); *Lopez v. VHS San Antonio Partners, LLC*, Civil Action No. 17-CA-151, 2017 WL 10841974, at *1 n.1 (W.D. Tex. Dec. 19, 2017).

an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on June 14, 2021, at Houston, Texas.

                                                Christina A. Bryan
                                           United States Magistrate Judge